## CIRCUIT COURT OF BUCHANAN COUNTY

Tazewell Oil Co., Inc.

v.

Miners and Merchants
Bank and Trust Co. et al.

April 10, 1990

Case No. 85-86

By JUDGE NICHOLAS E. PERSIN

The Court will dispense with the statement of facts. Except for some minor differences, the briefs filed by the respective parties accurately reflect events leading up to the verdict of the jury. Following the jury's verdict on May 13, 1988, several post-trial motions were filed, briefed, and argued, with the last appearance before the Court by the lawyers taking place on August 31, 1989.

Subsequently, · additional correspondence relative to said motions was received and filed by the Court.

The motions and questions presented by United Virginia Bank (hereinafter referred to as UVB) will be addressed separately by the Court.

*I. Should the Jury Verdict in Favor of Tazewell Oil Company, Inc., Be Set Aside and Judgment Entered for UVB?*

UVB asserts that it was effectively released when Tazewell Oil Company, Inc. (hereinafter referred to as Tazewell Oil) released Miners and Merchants Bank and Trust Company (hereinafter referred to as M & M), and Grundy National Bank (hereinafter referred to as GNB). The Court disagrees. These suits involved multiple claims of injury, not just a single item of damage, i.e., the total destruction of the business of Tazewell Oil. The settlement with M & M and GNB resolved these claims. The common law doctrine of release does not apply unless it was one indivisible injury. This issue is governed by the case of *Katzenberger v. Bryan*, 206 Va. 78 (1965), which allows settlement of numerous claims in tort and contract between several parties. The release was not unconditional for one indivisible injury. It was only the consolidation on all causes of action that brings into issue such a position on the part of UVB. For the Court to hold otherwise, a settlement of such a case would be virtually impossible unless all of the parties defendant were involved in the settlement.

The Court finds the release agreements are consistent with § 8.01-35.1 of the Code of Virginia. The proceeds of the settlement bear a reasonable relationship to the potential liability of M & M and GNB. The history and proceedings of the case prior to settlement refute any possibility of collusion between the parties. The Court finds that the good faith requirement of § 8.01-35.1 has been met.

*II. Is the Evidence Sufficient As A Matter of Law to Support A Verdict Against UVB on the Conspiracy Count?*

UVB argues there was no direct or circumstantial evidence to indicate any motive of malice on its part, or anyone else, toward Tazewell Oil. It also avers that the elements of § 18.2-499, the conspiracy statute, were not met and all UVB did was try to collect its debt. It cited the case of *Glass v. Glass*, 228 Va. 39 (1984), for the proposition that UVB is not liable for damages when it acted within its rights. UVB also argues that it did only what it had a legal right to do toward the collection

of the debt. The Court again disagrees. Tazewell Oil claimed that neither UVB nor M & M had any right to foreclose upon Tazewell Oil's assets. Based on the evidence, this question was for the jury to decide. The jury was also confronted with whether the foreclosure was done to prevent Tazewell Oil from filing for bankruptcy under Chapter Eleven. Once the jury decided this issue in favor of Tazewell Oil, the Court finds the other elements of the conspiracy statute were satisfied to justify the jury's finding of a conspiracy.

*III. Is the Evidence Insufficient As A Matter of Law to Support A Verdict Against UVB on the Tortious Interference with Contract Count?*

A review of the testimony reveals that Tazewell Oil met the requirements to justify the verdict of the jury on this question. The case of *Chavez v. Johnson*, 230 Va. 112 (1985), at page 120, sets forth the elements that must be in existence:

(A) The existence of a valid contractual relationship; and

(B) Knowledge of the relationship or expectancy on the part of the interferer; and

(C) Intentional interference inducing or causing a breach or termination of the relationship; and

(D) Resultant damage to the party whose relationship has been disrupted.

The jury was persuaded by the evidence that UVB interfered with the contract between M & M and Tazewell Oil and that this interference caused Tazewell Oil to suffer damage. The knowledge requirement was satisfied, if not by actual knowledge on the part of UVB, by constructive knowledge through H. A. Street, who was then acting as attorney for both M & M and UVB. UVB's motion to set aside the jury verdict on this issue is, therefore, denied.

*IV. Did M & M, As A Matter of Law, Comply with the Contract with Tazewell Oil?*

Section 8.9-503 of the Code is inapplicable to the facts in this case because M & M and Tazewell Oil agreed otherwise in the February 8th agreement. The conduct of

the parties to this agreement is consistent with the fifteen-day notice requirement. Furthermore, the February 8th agreement is not a "Security Agreement." It granted no immediate interest in collateral. The seizure was illegal without the notice requirement. It was not, as alleged by UVB, simply the opportunity for Tazewell Oil to cure default before acceleration of the debt by UVB. Since notice was a requirement to be met by UVB, the cases set forth in its brief on this issue are not applicable.

*V. Is the Evidence Insufficient As A Matter of Law to Support A Verdict for Punitive Damages?*

UVB relies again on the argument that it was only doing what it had a legal right to do; consequently, there could not be any actual malice to justify the verdict. Again, the Court disagrees. There was ample evidence presented to the jury to support punitive damages, and its finding is warranted under the circumstances of this case.

*VI. Should the Court Set Aside the Jury's Verdict Based on the Following:*

*A. Error Was Committed When All Cases Were Consolidated.*

The allegations of conspiracy and the suits dealing with tort and contract claims followed the filing of the injunction suit. In the judgment of the Court, the issues in all cases pertaining to these parties were inextricably connected. In order to avoid piecemeal litigation, the possibility of conflicting decisions, and for reasons of judicial economy, all cases were consolidated for trial. UVB maintains that this decision created sympathy and prejudice for the individual parties such as Sylvia McLaughlin and Carol Mays. Such a position is based merely on speculation. In order to achieve complete justice, consolidation was necessary on these very complex issues. The motion is, therefore, denied.

*B. A Mistrial Should Have Been Declared When Juror Hurley Was Discharged.*

The Court disagrees. It is just as plausible to argue that Hurley's discharge was a result of some wrongdoing on the part of Tazewell Oil, et al., as it is to speculate that it was as a result of wrongdoing by the banks. The Court took every precaution to insure that the balance of the jury was not in any way tainted by this action. UVB's motion is denied because it is based on speculation.

*C. The Settlement With M & M And GNB Prior To Closing Argument Warranted A Mistrial.*

UVB argues it was prejudiced before the jury when GNB and M & M settled at the last minute after such a prolonged and difficult trial. Again, UVB speculates. The sudden turn of events following settlement and its effect on the parties before the jury often occurs. Such an event is likely when multiple parties are involved in complicated commercial litigation. The motion is denied.

*D. Mr. Daughtrey Should Have Been Permitted To Qualify As An Expert In The Field Of Commercial Lending.*

The Court granted UVB several opportunities to qualify the witness as an expert on matters other than dealings between banks and financially troubled companies. Mr. Daughtrey was an accountant by trade. He had sufficient training and experience, in the opinion of the Court, to permit him to qualify as an expert with financially troubled companies. He did not satisfy the Court that he had sufficient knowledge or expertise of the banking industry for him to testify as an expert in that field. The motion is denied.

*E. The Testimony Of The Witnesses, Scott And Schermer, Should Have Been Excluded.*

The underlying theme of UVB's conduct was that it was simply trying to collect its debt and that all actions taken by it against McLaughlin and his companies were

a result of rights granted in the loan documents. Schermer and Scott were called as experts regarding generally accepted commercial standards and practices in the banking industry. Their training and experience, in the judgment of the Court, qualified these experts to give their expert opinions to the jury. This evidence was relevant to the contention of UVB that it acted properly. The motion is denied.

*F. The Experts Offered By UVB Should Have Been Permitted To Testify That Tazewell Oil Was Not A Going Concern As Of May 31, 1985.*

At the time of trial, the Court determined that the ultimate issue for the jury was to determine when, and if, Tazewell Oil was a going concern. UVB asserts that the evidence should have been permitted because it would have allowed permissible factual conclusions, rather than impermissible legal conclusions, to come before the jury. The Court disagrees. There was ample evidence presented by lay and expert witnesses for the jury to decide this issue. A contrary ruling would have invaded the province of the jury.

*G. Error Was Committed When The Corporate Resolution Of Raines, Inc., Was Refused In Evidence.*

The Court's comments will be limited to the record of trial regarding this matter. The Court believes it acted properly when it ruled that the resolution could not be admitted in evidence. If error was committed by this ruling, it was harmless because Raines testified in person and expressed his intentions of future business conduct before the jury.

*H. Were The Form Verdicts Presented To The Jury Improper Justifying The Setting Aside Of The Jury's Verdict?*

The Court believes not. The jury forms were not prejudicial. UVB had the opportunity to fully develop its argument concerning the jury's findings on such forms. Instructions from the Court as to the use of the form verdicts were not justified in this case. Because of the

numerous difficult issues to be decided, the Court made a deliberate effort to present the jury with form verdicts that were neutral. The motion is denied.

*I. The Court Should Set Aside So Much Of The Jury Verdict As Awards Compensatory Damages And Punitive Damages On More Than One Count.*

It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted, and a plaintiff may not recover damages twice for the same injury because of two legal theories. UVB asks the Court to adopt this rule. Tazewell Oil argues the verdict of the jury should be upheld. The Court disagrees with Tazewell Oil because there was no evidence to support a combined verdict of $600,000.00 for compensatory damages. The evidence offered by the experts on damages required the jury to return a verdict consistent therewith. Unlike personal injury cases where much of the evidence is general and allows a finding within the range of damages claimed, the jury was incapable of fixing an award for business damage without the evidence of the expert witnesses. The only other evidence that could have been considered by the jury as damage was that presented by Tucker W. McLaughlin concerning the sale of Tazewell Oil to James Childress for $300,000.00. The damage evidence and the jury's awards are inconsistent and, if allowed, would amount to double recovery. Once the jury concluded that the evidence justified a verdict in favor of Tazewell Oil on the conspiracy count, the tortious interference count was consumed.

The Court also grants the motion of UVB to disallow the punitive damage award on the tortious interference count. The object of punitive damages is to impose a penalty upon a defendant for wrongful conduct and to dissuade others from repeating such conduct. Since the verdict of the jury was against UVB on the conspiracy count, Section 18.2-500 automatically awarded treble damages. Under these circumstances, the Court finds that an award of both punitive damages for the tortious interference count and statutory treble damages on the conspiracy count would frustrate the intent of the law and would result in double punishment to UVB and a double recovery for Tazewell Oil.

Accordingly, the Court allows $300,000.00 compensatory damages on the conspiracy count and treble damages totalling the sum of $900,000.00.

*J. Should The Court Grant A Credit To UVB For The $473,500.00 Paid By M & M And GNB In Consideration Of The Releases Given Them By Tazewell Oil?*

The Court has ruled that the settlement of Tazewell Oil with M & M and GNB did not release UVB. The Court has further held that the good faith requirement of the statute has been met. In the settlement agreement, Tazewell Oil sought to limit the credit to be given UVB on the conspiracy count to $15,000.00. In support of this position, Tazewell Oil argues that because of other suits and individual claims against M & M and GNB, which had a reasonable relationship to the value of the settlement, only $15,000.00 should be applied as a credit to UVB. The Court disagrees. Section 8.01-35.1 provides that "any amount recovered against the other tortfeasors, or any one of them, shall be reduced by any amount of consideration paid for it, whichever is greater." The statute makes no provision for allocating the consideration between causes of action or tortfeasors. As this case was presented, the Court should not allow Tazewell Oil to receive the protection under § 8.01-35.1 without applying the credit provision of the statute. The motion of UVB to apply a credit of $473,500.00 toward the amount awarded by the jury on the conspiracy count, i.e., $900,000.00, is granted.

*K. In The UVB Collection Suit, Should The Court Set Aside The Jury Verdict And Enter Judgment In Favor Of UVB?*

Pursuant to Instruction Sixteen, the jury found by a preponderance of the evidence that UVB proceeded to collect and dispose of the accounts receivable and inventory of Tazewell Oil in a commercially unreasonable manner. UVB contends the Court erred by granting the instruction because it operated as an absolute bar to UVB's right to obtain a deficiency judgment. UVB maintains the Court should have adopted the "shift rule," which requires a creditor who does not conform to the provisions

of the Uniform Commercial Code in the disposition of collateral to prove by a preponderance of the evidence that the value received for the collateral is equal to its fair market value. It further argues that the testimony of Mr. Hughes satisfied the preponderance of the evidence requirement as to the value of the accounts receivable.

Tazewell Oil contends the "absolute bar rule" adopted by the Court during trial was correct. Its application erases the deficiency, and the debt no longer exists. Tazewell Oil, et al., also requests the return of all collateral and a portion of the funds collected.

Numerous cases supporting each position have been cited to the Court. The issue is one of first impression in Virginia.

An analysis of the available case law persuades this Court that it committed error when it adopted the "absolute bar rule" contained in Instruction Sixteen. The application of the rule in this case is draconian in nature. It should not contradict the intent of the Uniform Commercial Code under Code § 8.1-106, which provides in Paragraph One thereof that "Neither consequential, or special, or penal damages may be had except as specifically provided in this Act, or by other rule of law."

With the application of the "shift rule," UVB requests judgment against Tazewell Oil, et al., in the collection suit. This request is denied. The parties are entitled to a new trial by jury. In this regard, the motion of UVB is granted. The verdict of the jury in the collection suit is set aside.

Until the collection suit is retried, the motions dealing with return of collateral and funds to Tazewell Oil, et al., from UVB are taken under advisement.

The assignments of error in the record not addressed by the Court in this opinion are overruled.